IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EARL SALTHER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 C 2177 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| VILLAGE OF NILES, ILLINOIS a municipal | ) | |
| corporation, ANDREW PRZYBYLO, individually | ) | |
| and in his official capacity as Mayor of the Village | ) | |
| of Niles, Illinois, LYNN BALL, individually and in | ) | |
| her official capacity and FRED BRAUN, | ) | |
| individually and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Earl Salther has brought a two count second amended complaint (improperly titled "First Amended Complaint at Law") against his former employer, the Village of Niles ("the Village"), Andrew Przybylo, both individually and in his official capacity as Mayor of the Village, Lynn Ball, both individually and in her official capacity as Supervisor of the Streets Division of the Public Works Department of the Village, and Fred Braun, individually and in his official capacity the former Assistant Public Services Director and Superintendent of Streets and Sewers for the Village. Count I alleges racial discrimination under 42 U.S.C. § 1981 against all defendants. Count II, brought under 42 U.S.C. § 1983 against the individual defendants, asserts a claim for violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants have moved for summary judgment on both counts. For the reasons set forth below, the motion is granted.

**BACKGROUND**

Plaintiff, an African American male, began his employment with the Village as a Serviceman I in the Public Works Department on August 27, 1990. During his employment, he was the only African American who worked in the Public Works Department or in any management capacity at the Village. Plaintiff was promoted to Serviceman II position and then subsequently to a manager position in 2005.

Plaintiff was arrested for his first DUI in June 2002. On June 16, 2002, he received a statutory summary suspension of his driving privileges for six months. On December 15, 2014, plaintiff was arrested for his second DUI. He again received a statutory six-month suspension of his driving privileges and was suspended from work at the Village from January 31, 2014, to March 16, 2015. At the time of his second DUI arrest plaintiff was the sewer and water manager for the Village. As a result of this second DUI arrest Plaintiff, with advice of his attorney, on March 20, 2015, entered into a "Demotion and Last Chance Agreement" ("Last Chance Agreement") with the Village so that he could return to work. Plaintiff's union, the International Operating Engineers Union, Local 150 (the "Union"), was also a party to that agreement. In the Last Chance Agreement, plaintiff acknowledged that from January 31, 2015 through March 16, 2015, he was away from work because he was unable to perform his essential job functions without a valid commercial driver's license ("CDL"). As part of that agreement, the parties agreed that plaintiff would be permitted to return to work if he remained in full compliance with the agreement and applied for and obtained authorization from the Secretary of State to operate a motorized vehicle with a Monitoring Device Driving Permit ("MDDP"). Plaintiff agreed to return to work as a Serviceman II. Both plaintiff and the Union agreed that as a result of the DUI arrests plaintiff was deemed ineligible to continue in his role as Supervisor/Manager.

The Last Chance Agreement also provides that plaintiff was expected to obtain his regular/unrestricted CDL within one year of the date of the agreement. If plaintiff was unable to obtain the unrestricted CDL, the Village had the right to remove plaintiff from active employment, place him on unpaid leave of absence status for up to three months while plaintiff made further attempts to get the CDL. In no event was plaintiff permitted to remain employed subject to a hardship license for more than one year from the date of the issuance of that license.

Paragraph 7 of the agreement, on which defendant relied to terminate plaintiff's employment, provides, "In the event that [plaintiff] engages in any further action either on or off duty which causes his driver's license to be suspended or revoked, his employment with the Village will be terminated and that this constitutes just cause to terminate his employment with no further warning or chances to remain employed."

From September 2015 until late December 2015 plaintiff was on limited duty while recovering from hip surgery. During that period plaintiff complained to the Village that he was being subjected to a hostile work environment. He had meetings with some of his superiors and the human resources director about his complaints. Not satisfied with the Village's response, on December 22, 2015, he filed a charge of racial discrimination with the EEOC. On January 14, 2016, he filed another charge with the EEOC, this time complaining about retaliation for having filed the first charge. On July 15, 2016, plaintiff and the Village entered into a Settlement Agreement and General Release ("Settlement Agreement") resolving all of plaintiff's claims against the Village. That agreement provided that plaintiff was subject to the same terms and conditions of employment applicable to similarly situated employees. The Settlement Agreement

specifically provided that "all conditions of [plaintiff's] Last Chance Agreement entered into with the Village during March, 2015 will survive and remain in effect . . . ."

On March 15, 2017, two years after signing the Last Chance Agreement, plaintiff pled guilty to the December 15, 2014, DUI arrest that led to the Last Chance Agreement. As a result, his driver's license was revoked on April 2, 2017. Both plaintiff's attorney and the Illinois Secretary of State notified the Village that plaintiff's license had been revoked. On May 31, 2017, the Village terminated plaintiff's employment.

## DISCUSSION

Defendants have moved for summary judgment on both counts. Summary judgement is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. Hutchison v. Fitzgerald Equip. Co., Inc., 910 F.3d 1016, 1021 (7th Cir. 2018). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are the jobs for a factfinder." Johnson v. Advocate Health and Hospitals Corp., 892 F.3d 887, 893 (7th Cir. 2018).

As an initial matter, plaintiff's complaint contains numerous factual allegations about his claims of racial discrimination and retaliation that led to the Settlement Agreement. Plaintiff has agreed that any claim based on any defendant's actions prior to the Settlement Agreement has been

released, and that the only issue in the instant case is whether his termination as a result of his loss of driver's license was based on discrimination. [Dkt. No. 55, p. 3].

Defendants argue that both of plaintiff's claims fail because he cannot establish a prima facie case of discrimination. Section 1981 of the Civil Rights Act of 1866 "protects the right of all persons to make and enforce contracts regardless of race." Oliver v. Joint Logistics Managers, Inc. 893 F.3d 408, 411 (7th Cir. 2018); 42 U.S.C. § 1981. The Equal Protection Clause protects individuals from invidious discrimination based on race. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019). To survive summary judgment on a § 1981 or Equal Protection claim, the plaintiff must either provide enough evidence to "permit a reasonable factfinder to conclude that the plaintiff's race…caused the discharge or other adverse employment action," Id; Ortiz v.Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016), or employ the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

It appears that plaintiff is attempting to employ the McDonnell Douglass approach. Under this approach, plaintiff has the initial burden of establishing a prima facie case of discrimination by providing evidence that: 1) he is a member of a protected class; 2) he was meeting his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) another similarly situated employee not in the protected class was treated more favorably than the plaintiff. McKinney v. Sheriff of Whitley County, 866 F.3d 803, 807 (7th Cir. 2017). If established, the prima facie case of discrimination creates a presumption of discrimination, shifting the burden to the employer to articulate, nondiscriminatory reason for the employment decision. Id. If the employer does so, the burden shifts back to the plaintiff to present evidence that the stated reason is a pretext for discrimination. Id.

In the instant case, there is no dispute that plaintiff is a member of a protected class and that he suffered an adverse action. Defendants argue that plaintiff has failed to establish that he was meeting the Village's legitimate performance expectations or that he received disparate treatment compared to similarly situated employees outside the protected class. The court agrees.

First, in the Last Chance Agreement that plaintiff entered into with the Village and the Union, and with advice of counsel, plaintiff specifically agreed and acknowledged that it is a condition of employment with the Village for plaintiff to obtain and maintain a valid CDL with the State of Illinois. Plaintiff has attempted to argue that having a CDL is not an essential function of his job, but he cannot get around his agreement that it is. He does not argue that the provision of the Last Chance Agreement was added based on his race and agrees that he cannot do so as a result of the releases contained in the Settlement Agreement. Thus, he is left with arguing that the Village elected to enforce the Last Chance Agreement because his is African American.

To support this argument, plaintiff points to several individuals that he claims were similarly situated and treated more favorably. For example, he points to John Burke, stating that Burke told him that he was arrested for a DUI but not terminated. Actually, Burke testified that the incident resulted in an assault charge, for which he was disciplined, but there was no alcohol related or DUI charge. Plaintiff also points to Chris Dieschbourg, claiming that he was treated more favorably by the Village for an alleged DUI occurring after 2016. But Dieschbourg testified that he had not received a DUI after 2016. Nor is there any evidence that anyone similarly situated to plaintiff was treated more favorably after entering a Last Chance Agreement after receiving two DUIs and ultimately losing driving privileges. The closest comparator to whom plaintiff points is Ethan Slopecki. Slopeki was not similarly situated, however, because unlike

plaintiff who had worked for the Village for a number of years, Slopecki was on probationary status when he was arrested for a DUI on July 8, 2018. Even if he was similarly situated, however, he was not treated more favorably than plaintiff. Slopecki, like plaintiff, received a DUI and was required to sign an Extension of Probation and Last Chance Agreement. That agreement contained terms identical to those in plaintiff's agreement regarding the employee obtaining and maintaining a driver's license as a condition of employment. Slopecki violated the terms of his agreement when he could not obtain a CDL and was terminated. He was not treated any better than plaintiff. Consequently, the court concludes that plaintiff cannot establish a prima facie case of discrimination. Nor can he establish that defendants' proffered reason for his termination is a pretext for discrimination. As a result, defendants' motion for summary judgment [Doc. 200] is granted.

## CONCLUSION

For the reasons described above, defendants' motion for summary judgment [Doc. 100] is granted.

**ENTER:**

*[signature]*

**Robert W. Gettleman
United States District Judge**

**DATE:     January 31, 2022**